IN THE UNITED STATES DISTRICT COURT FOR THE
WESTERN DISTRICT OF MISSOURI
SOUTHERN DIVISION

| | | |
|---|---|---|
| UNITED STATES OF AMERICA, | ) | |
| Plaintiff, | ) ) ) | |
| v. | ) ) | Case No. 3:07-CR-05015 |
| MARK EDWARD ELLEFSEN | ) ) ) ) | |
| Defendant. | ) | |

### SENTENCING MEMORANDUM ON BEHALF OF MARK EDWARD ELLEFSEN

COMES NOW the Defendant, Mark Ellefsen, by and through counsel, and hereby submits the following sentencing memorandum:

**1. PROCEDURAL HISTORY**

On May 18, 2009, Defendant Mark Ellefsen was found guilty by a jury as to Counts 1, 5, 6, and 7 of the indictment involving a conspiracy to defraud the United States and assisting in the filing of false tax returns.

**II. THE PSI AND THE RECOMMENDED SENTENCING**

On September 22, 2009, Probation Officer Shawn Vendelin of the United States Probation Office filed the final presentence report with the court. The probation office calculated the applicable guideline range to be an offense level 24 and a criminal history category of 1, the advisory range of imprisonment of 51 to 63 months and a fine range of $10,000 to $100,000.

**III. THE SENTENCE IMPOSED MUST ONLY BE "REASONABLE AND MUST BE SUFFICIENT, BUT NOT GREATER THAN NECESSARY," TO COMPLY WITH THE STATUTORY PURPOSES OF SENTENCING.**

1

In *United States v. Booker*, the United States Supreme Court rendered the guidelines advisory. *Booker*, 543 U.S. at 245, 259 to ensure that a sentence is "reasonable" the trial Court should give meaningful consideration to sentencing factors contained in 18 U.S.C. §3553(a) which provides, in part:

> The court shall impose a sentence sufficient, but not greater than necessary, to comply with the purposes set forth in paragraph (2) of this subsection. The court, in determining the particular sentence to be imposed, shall consider–
>
> (1) the nature and circumstances of the offense and the history and characteristics of the defendant;
>
> (2) the need for the sentence imposed--
>
>     (A) to reflect the seriousness of the offense, to promote respect for the law and to provide just punishment for the offense;
>
>     (B) to afford adequate deterrence to criminal conduct;
>
>     (C) to protect the public from further crimes of the defendant; and
>
>     (D) to provide the defendant with needed educational or vocational training, medical care, or other correctional treatment in the most effective manner;
>
> (3) the kinds of sentences available;
>
> (4) the kinds of sentence and the sentencing range established for
>
>     (A) the applicable category of offense committed by the applicable category of defendant as set forth in the guidelines–
>
> . . .
>
> (6) the need to avoid unwarranted sentence disparities among defendants with similar conduct; and
>
> (7) the need to provide restitution to any victims of the offense.

The import of *Booker* is that the Court is no longer compelled to follow the guidelines but, rather, the Court must only consider them as part of a broader analysis when considering the factors relevant to sentencing as set forth in 18 U.S.C. §3553(a). See also 18 U.S.C. §3661 ("no limitation

2

shall be placed on the information concerning the background, character, and conduct of a person convicted of an offense which a court of the United States may receive and consider for the purpose of imposing an appropriate sentence." (Cited in *Booker* at 15).

Mark Ellefsen asks the Court to fashion a sentence "sufficient but not greater than necessary" to achieve the statutory purposes of punishment, as required by 18 U.S.C. § 3553(a) in light of *United States v. Booker*, 125 S.Ct. 738 (2005). *Booker* restored the district courts' ability to fashion sentences tailored to the individual circumstances of the case and defendant by requiring courts to consider factors other than the sentencing range prescribed by the United States Sentencing Guidelines. Indeed, under section 3553(a), courts are required to sentence below the range if such a sentence would be sufficient to achieve the purposes of punishment.
See *Gall v. United States*, 552 U.S. 38, 128 S.Ct. 586 (2007).

## IV. THE NATURE AND CIRCUMSTANCES OF THE OFFENSE AND HISTORY AND CHARACTERISTICS OF THE DEFENDANT

The Aegis Trust System was started in Chicago, Illinois, by Edward Bartoldi, a graduate of Harvard Law School, and Michael Vallone. The Internal Revenue Service began its nine-year investigation of Aegis in June 1996. Undercover agents, such as Michael Priest, were fully involved with Aegis by 1998, even attending offshore seminars. At one point, the Aegis system was presented to the Pennsylvania and Ohio Bar Associations during CLE's. See attached "Exhibits A and B." At another, the system was presented at insurance seminars as a legitimate way to decrease taxes and increase the ability of one to make charitable contributions. In hindsight, one wonders how such things could happen, but they did. And when they did, these events were used to affirm and reaffirm the legitimacy of the Aegis Trust System to its clients nationwide. Fancy offices and limousines and inches-thick manuals packed with faux legalities were all deployed against Aegis' own customers to convince them they were doing something that was perfectly legal, something that the nation's elite families did all the time. When a question was raised by a client, Aegis made certain that the advice they received was

3

all "in house." A cease and desist order was never sought to prevent Aegis from doing business. At its height, Aegis had over six hundred clients. Only a handful of clients were prosecuted; the rest were settled civilly.

Brian Ellefsen became a client of Aegis after he was solicited by a so-called "tax and trust expert," Jim Quay, who was the brother of an Emergency Room doctor working at McCune-Brooks Hospital in Carthage, Missouri. The initial sales pitch was asset protection from malpractice and divorce, along with substantial tax avoidance. As office manager, Mark Ellefsen was asked by his brother to look into the Aegis program. Attached as "Exhibit C" is a letter Mark Ellefsen received based on his inquiry to the Illinois Attorney General's office.

Mark Ellefsen did not personally participate in Aegis program and there has never been a question as to the accuracy of Mark Ellefsen's personal returns. With regards to his personal returns, Mark has always been an honest taxpayer. Mark Ellefsen was paid a straight salary as office manager and received no economic benefit from his brother's participation in the Aegis scheme. Mark Ellefsen erroneously believed that he was not personally responsible for the way his brother chose to handle his income taxes.

Apart from his involvement in this incident, Mark Ellefsen has always been a law-abiding citizen. From August 1994 until March 1995 he served as a police officer with the St. Louis County Police Department. Mark enlisted in the United States Army in 1988. Since that time he has provided exceptional service and was commissioned in 1991. Records from the U.S. Army National Guard confirm his exceptional service and he has numerous positive evaluations. Mark has been described as a highly-disciplined soldier. Lieutenant Colonel Lance G. Curtis speaks to Mark's moral character as follows:

> During the twenty-one years that I have known Mark, I have had literally dozens of opportunities to observe him in social and military situations. I have also observed him in situations where he could have very easily compromised his integrity or standards and only I would have known. I can tell you on my word as a Military Officer that I have never observed Mark stray from his integrity, professionalism, ethics, or moral character. This is rare in today's world, but Mark lives by high standards. Mark is committed to doing what is right, not only when others are watching, but more

4

> importantly when others are not. I steadfastly maintain that Mark would not do anything intentionally illegal, immoral, or unethical.

Dalton Wright has had extensive contact with Mark for twenty years:

> My friendship with Mark goes back more than 20 years, starting when he entered the Missouri Army National Guard as a 2nd Lieutenant. I have seen firsthand this young man grow as a military officer and aviator, and husband, having children. I can unequivocally say without any reservations that he is one of, if not the finest, young men that I have ever known.

Perhaps Mark's greatest strengths and his greatest weakness is his willingness to follow the orders of his superiors. The qualities that make him a good soldier obviously did not translate well with regards to assisting in his brother's financial matters. Mark was very much in a subordinate relationship with his brother and has always viewed his older brother as smarter, wiser and more successful. Because of the instant offense, they no longer maintain any relationship.

The nature and circumstances of the offense and the characteristics of Mark Ellefsen evoke that a sentence outside the Sentencing Guidelines would be reasonable and appropriate in this case. See letters attached as "Exhibit D."

First, the history and characteristics of Mark Ellefsen suggest that there is a low chance of recidivism and that Mark Ellefsen can and likely will live as an exemplary citizen. Mr. Ellefsen is a 40-year-old man who currently resides in Camdenton, Missouri, with his wife, 9-year-old daughter and 10-year-old son.

After Mark became aware that the Aegis Trust System was determined to be an illegal, abusive trust system and that he and his brother were under investigation, he worked diligently with the accountant hired by his brother to file proper amended returns which were properly assessed by the Internal Revenue Service. Filing amended returns which treated earned income as dividends would have violated the assignment of income doctrine and subjected Brian Ellefsen to possible penalties for

5

failing to pay self employment taxes. After filing proper returns, Brian Ellefsen paid over $480,000 in back taxes, which, given his financial situation, represented an extraordinary effort at restitution

The family support and protection that Mark Ellefsen gives his family cannot be provided or replaced by anyone else should Mark Ellefsen be incarcerated, which directly affects the health and safety of his family.

### V. THE NEED FOR THE SENTENCE IMPOSED TO REFLECT THE SERIOUSNESS OF THE OFFENSE; TO AFFORD ADEQUATE DETERRENCE; TO PROTECT THE PUBLIC FROM FURTHER CRIMES OF THE DEFENDANT; AND TO PROVIDE THE DEFENDANT WITH CORRECTIONAL TREATMENT IN THE MOST EFFECTIVE MANNER.

A sentence that falls outside the recommended Sentencing Guideline range in the instant case would still promote the aims of 18 U.S.C. §3553(a) because it would nonetheless reflect the seriousness of the offense committed, would protect the public from further crimes and provide deterrence, would promote respect for the law, and would still provide just punishment for the offense Mark Ellefsen has committed.

It is submitted that a sentence of home incarceration combined with community service would be sufficient to reflect the seriousness of the offense, protect the public from future crimes, promote respect for the law, and provide just punishment. A sentence of home incarceration and community service is still very serious and would provide deterrence to others who would consider engaging in such conduct. Mark Ellefsen certainly understands the seriousness of his offense. He has learned a tremendous amount from the experience and has vowed to never be involved with this type of activity again.

Mark Ellefsen has not committed an act of violence and the public should not require any protection from any possible future crime of Mark Ellefsen. The Court's discretion to order home incarceration has been upheld as reasonable in an income tax case. See *U.S. v. Tomko*, 562 F.3d 558 (2009).

6

## VI. THE NEED TO PROVIDE RESTITUTION TO ANY VICTIMS OF THE OFFENSE.

While the issue of the amount of restitution due is open, a split sentence would maximize Mark's ability to make restitution.

## VII. COUNSEL'S RECOMMENDATION OF SENTENCE.

For the foregoing reasons, Mr. Ellefsen's counsel hereby respectfully requests a sentence be imposed that is outside the current advisory guideline range. Under the circumstances discussed above, it is submitted a sentence of home incarceration and community service could be reasonable and "sufficient, but not greater than necessary" to comply with the purpose set forth in 18 U.S.C. §3553(a). Such a sentence would still take into account the nature and circumstances of the offense and the history and characteristics of the defendant; the seriousness of the offense, the promotion and respect for the law; just punishment for the offense; adequate deterrence to criminal conduct and protection of the public from further crimes; avoidance of unwarranted sentencing disparities; society's interest in providing the defendant with needed training, care, and other correctional treatment in the most effective manner.

Respectfully submitted.

  /s/ Rob J. Aiken
Rob J. Aiken        Mo. Bar No. 29049
3249 East Ridgeview Street
Springfield, Missouri 65804
Phone: (417) 887-4141
Fax: (417) 887-4177

Attorney for Mark Ellefsen

CERTIFICATE OF SERVICE

I hereby certify that on May 13, 2010, I electronically filed the foregoing with the Clerk of the Court using the CM/ECF system which sent E-mail notification of such filing to all CM/ECF participants in this case.

                                                      /s/ Rob J. Aiken