IN THE UNITED STATES DISTRICT COURT FOR THE
WESTERN DISTRICT OF MISSOURI
SOUTHWESTERN DIVISION

| | | |
|---|---|---|
| UNITED STATES OF AMERICA, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | Criminal Action |
| | ) | No. 07-05015-02-CR-SW-DGK |
| MARK EDWARD ELLEFSEN, | ) | |
| | ) | |
| Defendant. | ) | |

**GOVERNMENT'S RESPONSE IN OPPOSITION TO
DEFENDANT MARK ELLEFSEN'S SENTENCING BRIEF**

The United States of America, by Beth Phillips, United States Attorney for the Western District of Missouri, Assistant United States Attorney Steven M. Mohlhenrich, and Trial Attorney Michael C. Boteler, respectfully submits this Response in Opposition to Defendant Mark Ellefsen's Sentencing Brief.

**I. Law and Argument**

In his sentencing memorandum, Mark Ellefsen argues that home incarceration would be an appropriate sentence because (1) Mark Ellefsen's role in the offense is mitigated by his reliance on Aegis promoters and reliance on his brother, Dr. Brian Ellefsen and (2) his background and circumstances, including his military service and family. For the reasons set forth in the Government's Sentencing Brief and the following, Defendant Mark Ellefsen's request should be denied and he should receive a sentence in the middle range of the sentencing guidelines.

A.      *Mark Ellefsen's Role in the Offense*

Mark Ellefsen blames his conduct on everyone, but himself. He blames the Aegis promoters for tricking him. He was fooled by their "fancy offices," "limousines," "inches-thick manuals packed with faux legalities," the "tax and trust expert," and claims that Aegis system was what "the nations's elite families did all the time." (Doc. 275 at 3-4.) He continued to be duped when the Illinois Attorney General's office sent him a letter informing him that they had received no complaints against the Aegis Company.[1] (Doc. 275 at Ex. C.) It was also Brian Ellefsen's fault. Mark Ellefsen's training in the military to "follow the orders of his superiors" combined with his feeling that he was "in a subordinate relationship with his brother" basically led him to do what his brother wanted. (Doc. 275 at 5.)

However, Mark Ellefsen has no one to blame, but himself. As the jury found and the evidence overwhelmingly established, Mark Ellefsen knowingly, intentionally, and willfully violated the tax laws of the United States by assisting his brother in using the Aegis trust system. Certified Public Accountant (CPA) L. Michael Stelmacki, Brian Ellefsen's long-time accountant and adviser, testified that Defendants asked for his advice regarding the Aegis trust system. (Doc. 230 at 6.) On July 21, 1997, at Stelmacki's direction, an employee of Stelmacki's firm sent a fax to Mark Ellefsen with the comment, "Mark, please read this article, I hope it's not too late for Brian to reconsider." (*Id.*) The fax was an article about the IRS crackdown on abusive trust schemes. (*Id.*) On August 26, 1997, Stelmacki sent a letter to Brian Ellefsen, warning him in the strongest terms not to get involved with Quay and the Aegis Company. (*Id.* at 7-8.) In the letter, Stelmacki prophetically warned that "I am asking that you consider the worst case

---

[1] The letter by the Attorney General's Office states that "the fact that a business does not have any complaints is no assurance of the legitimacy of that business." (Doc. 275 at Ex. C.)

scenario in which the I.R.S. takes the position that you are committing tax evasion. They have the power to assess huge penalties and interest, to prosecute you, to ruin your career, and seize your property. Is the risk worth it?" (*Id.*)

After Stelmacki sent the letter to Brian Ellefsen, he had a telephone conversation with Mark Ellefsen in which Stelmacki discussed his concerns. (Doc. 230 at 8.) From that conversation, Stelmacki was left with the impression that Defendants would not proceed with Mr. Quay or with Aegis. (*Id.*) But instead of following Stelmacki's advice, Defendants went with the flashy used car salesmen (James Quay and the Aegis promoters) with their "fancy offices" and "limousines" and shady trust system in order to get unbelievable tax savings.

Over the years, Mark Ellefsen had multiple warnings that the Aegis system was illegal, and multiple opportunities to change the path he and his brother had taken. Lynn Bell-Osina, formerly Lynn Bell-Hampp, was an accountant associated with Jim Quay and the Aegis Company who prepared tax returns for Brian Ellefsen and his companies. (*Id.* at 9.) After her initial meeting with the Ellefsens, all contacts regarding Brian Ellefsen's Aegis trusts were only with Mark Ellefsen who was fully conversant in Brian Ellefsen's finances. (*Id.*) Bell-Osina testified that around April 15, 2000, she telephoned Mark Ellefsen to inform him of the March 31, 2000, search warrant executed at her office, and advised him in the strongest terms to get out of the Aegis trust system. (*Id.* at 11.) As she explained to the jury:

> I told [Defendant Mark Ellefsen] that the Internal Revenue Service had come to my office and seized the files of my clients, that I had subsequently contacted an attorney by the name of Charles Mansour, who was a tax attorney, who explained to me that . . . **the Aegis system was illegal**. And . . . then I obtained an attorney for myself by the name of Jack Townsend. . . . I started the process of calling all of my clients to let them know that they needed to seek alternate tax counsel, that they should go to see a tax attorney. Charles Mansour was a person whom they could go to see. And . . . that Charles Mansour had recommended that all of my clients amend their tax returns, effectively undoing the trust.

3

(*Id.*) (emphasis added). In response, Mark Ellefsen rejected her advice to get out of Aegis, seek independent tax and legal advice, and amend the returns of the business and trust entities. (*Id.* at 12.)

Michael Stelmacki also sent additional warnings to Brian and Mark Ellefsen. On May 29, 2001, in connection with his preparation of the 2000 corporate return for Brian Ellefsen's medical practice, Southwest Missouri Bone & Joint, Inc., Stelmacki sent a letter expressing his concern at the amount of "management fees" being deducted. (*Id.* at 14-15.) In a May 31, 2001, telephone conversation with Mark Ellefsen, documented for his office's file, Stelmacki discussed the representation letter he had sent and his concerns regarding the "management fees" and the need for those fees to be well-documented. (*Id.* at 15.) On February 18, 2002, in connection with his preparation of the 2001 corporate return for Southwest Missouri Bone & Joint, Inc., Stelmacki sent another letter to Brian Ellefsen expressing concerns about the management fees, which asked several pointed questions about the fees and advised Brian Ellefsen to consult a tax attorney, and attached several articles regarding abusive trust schemes. (*Id.* at 15-16.) In a September 10, 2002, telephone conversation memorialized by Stelmacki in a memorandum to the file, Mark Ellefsen told Stelmacki that he and Brian Ellefsen would provide no further information regarding the "management fees," and would not seek any outside opinion as to their legitimacy. (*Id.* at 17.)

Mark Ellefsen was not duped. Mark Ellefsen did not simply follow orders from his brother. As the manager of Brian Ellefsen's medical practice, Mark Ellefsen played an active and integral role throughout the conspiracy, for which he received a handsome salary from his brother. Mark Ellefsen received several point blank warning that the Aegis system was illegal.

4

Mark Ellefsen chose to roll the dice and risk his career, his reputation, and his family over money.

B. *Mark Ellefsen's Personal History and Circumstances*

Mark Ellefsen argues that he should receive a reduced sentence based on his personal history and circumstances, including his service in the Missouri Army National Guard, his family background, the financial support he provides to his family, and acceptance of responsibility as evidenced by the filing of amended tax returns. In support thereof, he attaches letters of reference. Many of these factors were addressed in the *Government's Sentencing Brief*. (Doc. 274.)

1. *Family Responsibilities*

A district court may depart from the Guidelines range if a defendant has significant family responsibilities such that incarceration would cause unusual harm. *United States v. Farrington*, 499 F.3d 854, 862 (8th Cir. 2007) (citing U.S.S.G. § 5H1.6). "But, it is a disfavored basis for departure, that is not triggered by the kind of family hardships that are ordinarily incident to incarceration." *Id*. (citations omitted). Mark Ellefsen lives with his wife and two children, ages nine and ten. As with any defendant with children, incarceration will no doubt have an impact on his children due to the separation and lost of income. *United States v. Johnson*, 908 F.2d 396, 399 (8th Cir.1990) (noting that "parents frequently are separated from children during periods of incarceration"). However, there has been no evidence established that the loss of caregiving and financial support by Defendant Mark Ellefsen would substantially exceed the harm ordinarily incident to incarceration, thus no departure is warranted.

## 2. *Acceptance of Responsibility*

There has been no acceptance of responsibility in this case by either Defendant. As to the amended tax returns, after being informed of the grand jury investigation, and in an attempt to avoid indictment, Brian Ellefsen with the help of Mark Ellefsen filed amended personal returns which partially acknowledged the fact that he had evaded taxes for the years 1997 through 2002. In essence, Defendants attempted to buy their way out of a crime by paying the back taxes. Such actions do not warrant a departure.

## 3. *Military Service*

A downward departure based on military service is warranted in only extraordinary cases. U.S.S.G. § 5H1.11; *United States v. Morken*, 133 F.3d 628, 629 (8th Cir. 1998). The Government does not contest that Mark Ellefsen honorably served his country in the Missouri Army National Guard. However, as the Probation Officer found, there is no extraordinary military service in this case. Nor has Mark Ellefsen in his sentencing memorandum or the letters attached thereto set forth any particular basis to find that his service was extraordinary.

In 1990, following the completion of an undergraduate Reserve Officer Training Corps (ROTC) program, Defendant Mark Ellefsen was commissioned a second lieutenant in the Missouri Army National Guard. From 1990 through 1999, he completed military requirements for service, and was promoted to first lieutenant and then captain. In 2000, Mark Ellefsen resigned his commission as an officer and requested reversion to the rank of warrant officer,[2] because the demands of his civilian employment (at his brother's medical practice) did not did

---

[2] *See* Exhibit A at 1 ("Request to Resign my Commission in The Missouri Army National Guard," Captain Mark E. Ellefsen, Mar. 1, 2000).

permit him time to complete the military educational requirements for promotion to Major.[3] In 2002, Mark Ellefsen did not complete the minimum number of unit assemblies (drills) necessary to obtain credit toward a military retirement,[4] and in 2003, he transferred to the Inactive National Guard,[5] meaning that he was no longer required to attend monthly drills or meet other military requirements. There, he remained until 2007.

Mark Ellefsen never served a tour of Active Duty, nor did he volunteer for any such until July 2007, three months after being indicted in this case, at which time he requested and was assigned to a drilling position.[6] Thereafter, Defendant and counsel referred to Mark Ellefsen's military service in letters[7] to Senator McCaskill, the United States Attorney for the Western District of Missouri, the Department of Justice, Tax Division, and the Probation Officer assigned to conduct the PSI, in seeking favorable consideration regarding this case, as well as during trial.

While the timing of Mark Ellefsen's renewed commitment to his service coincides with his becoming a defendant in this matter, all records reflect that he met the requirements for service in the Guard from his entry through the end of 2001, and that when he had the time to devote to his military duties, his performance was good. Mark Ellefsen's military service was not

---

[3] *See* Exhibit A at 2-3 (Department of the Army Form 67-9, Officer Evaluation Report, Captain Mark E. Ellefsen, Jun. 4, 2000).

[4] *See* Exhibit A at 4 (Army National Guard Annual Statement).

[5] *See* Exhibit A at 5 (Orders No. 314-017, Headquarters, Missouri National Guard, Nov. 10, 2002, transferring Defendant from the position of UH-1 pilot, Company C, 1st Battalion, 114th Aviation to inactive status).

[6] *See* Exhibit A at 6 (Orders No. 201-211, Headquarters, Missouri National Guard, Jul. 20, 2007, transferring Defendant from the Inactive National Guard to a position in C Company, 1st Battalion, 106th Aviation).

[7] *See* Exhibit B.

7

bad or deficient, but it was not extraordinary and does not merit a downward departure or variance.

C.     *Home Confinement*

The United States respectfully recommends that the Court sentence Defendant Mark Ellefsen to a guideline term of between 51 and 63 months imprisonment, and deny Defendan's request for home confinement. As the Eight Circuit recognized in *United States v. Ture*, 450 F.3d 352 (8th Cir. 2006), "[t]he goal of deterrence rings hollow if a prison sentence is not imposed in this case." *Id.* at 358. In *Ture*, the defendant pled guilty to evading close to $250,000, but the district court sentenced him to two years probation and 300 hours of community service. (*Id.* at 354-55.) The Eighth Circuit vacated the sentence, recognizing that " '[t]ax offenses, in and of themselves, are serious offenses,' " and that " 'a greater tax loss is obviously more harmful to the treasury and more serious than a smaller one." *Id.* (citations omitted). The Eighth Circuit found that the district court had "failed to adequately consider the seriousness of Ture's offense, the goal of promoting respect for our federal tax laws, and the need for a just sentence."[8] *Id.* at 358; *see also United States v. Carlson*, 498 F.3d 761 (8th Cir. 2007) (vacating a sentence of home confinement and community service where a defendant pled guilty to failing to pay over employment taxes in excess of $500,000).

---

[8] Defendant cites the Third Circuit decision in *United States v. Tomko*, 562 F.3d 558 (3rd Cir. 2009) (*en banc*) to support his position that a sentence of home confinement and community service is permissible. The dissent in *Tomko* found the reasoning persuasive in *Ture* and found that the sentence was unreasonable. *Id.* at 586-87. First, the decision in *Tomko* conflicts with Eight Circuit law. Second, the facts of *Tomko* materially differ with the current situation. Tomko pled guilty to one count of evading $228,552 in taxes. *Id*. at 561. In contrast, Mark Ellefsen went to trial and had a tax loss over $1 million.

8

A sentence of home confinement and community service is not warranted, and is inappropriate here because it would not take into account the seriousness of tax crimes and the goal of deterrence. Mark Ellefsen did not plead guilty; he went to trial and was found guilty, and he assisted his brother in evading over $1 million in taxes. As set forth above, Mark Ellefsen had several warnings that the Aegis system was illegal, but he chose to manage his brother's Aegis trust system. Nor has Mark Ellefsen set forth any reasons to warrant a departure.

## II. Conclusion

For the reasons set forth above, and in the *Government's Sentencing Brief* (Doc. 274), the United States submits that no downward departure or variance is warranted or appropriate, and that full consideration of the 18 U.S.C. § 3553(a) factors supports the imposition of the Guidelines-recommended punishment as to Defendant Mark Ellefsen. Accordingly, the United States respectfully recommends that Defendant Mark Ellefsen be sentenced to between 51 and 63 months imprisonment, to be followed by a term of supervised release. Further, for the reasons set forth in the *Government's Sentencing Brief*, the United States recommends that the Court order

Defendant Mark Ellefsen to pay restitution to the United States Treasury, as a joint and several obligation with Defendant Brian Ellefsen, in the amount of $1,242,903.55.

        Respectfully submitted,

        **BETH PHILLIPS**
        United States Attorney

By:   */s/ Steven M. Mohlhenrich*
       **STEVEN M. MOHLHENRICH**
       Assistant United States Attorney

       */s/ Michael C. Boteler*
       **MICHAEL C. BOTELER**
       Trial Attorney, Tax Division
       United States Department of Justice

10

Case 3:07-cr-05015-DGK   Document 279   Filed 05/18/10   Page 10 of 11

**CERTIFICATE OF SERVICE FOR CM-ECF PARTICIPANTS:**

      The undersigned hereby certifies that a copy of the foregoing was delivered on May 18, 2010, to the CM-ECF system of the United States District Court for the Western District of Missouri for electronic delivery to all counsel of record.

                                            */s/ Steven M. Mohlhenrich*
                                            **STEVEN M. MOHLHENRICH**
                                            Assistant United States Attorney